UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

RICHARD ZALEWSKI;
 GERIANNE PROM;
ROBERT WEDEL,

      Plaintiffs,

  v.                                  **COMPLAINT**
                                      Case Number: 20-629

MILWAUKEE CENTER FOR INDEPENDENCE, INC.,

      Defendant.

---

      NOW COME Plaintiffs Richard Zalewski, Gerianne Prom and Robert Wedel, and, as and for a Complaint through their attorneys, Alan C. Olson & Associates, s.c., by Alan Olson and Nicholas McLeod, against Defendant, Milwaukee Center for Independence, Inc., alleges and shows to the Court as follows:

### NATURE OF THE CASE

      1.    Plaintiffs, Richard Zalewski, Gerianne Prom and Robert Wedel, bring suit under the Employee Retirement Income Security Act of 1974, ("ERISA") [29 U.S.C. §1001 *et. seq.*] against Defendant, Milwaukee Center for Independence, Inc. to recover the money taken from Plaintiffs' Employee Retention Plan, Eligible 457 Executive Benefit Plan and Ineligible Deferred Benefit Plan (collectively, the "Plans").

### JURISDICTION AND VENUE

      2.    Jurisdiction over Plaintiffs' ERISA claims are conferred on this Court by 28 U.S.C. §1331, and ERISA §502(e)(2); [29 U.S.C. §1132(e)].

3. The Eastern District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. §1391 because Defendant resides in the Eastern District and Defendant's unlawful actions occurred in the Eastern District.

**CONDITIONS PRECEDENT**

4. All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

**PARTIES**

5. Plaintiff, Richard Zalewski ("Zalewski"), is an adult who resides at 5229 West Princeton Pines Ct., Franklin, WI 53132.

6. Plaintiff, Gerianne Prom ("Prom"), is an adult who resides at 3955 South Victoria Ct., New Berlin, WI 53151.

5. Plaintiff, Robert Wedel ("Wedel"), is an adult who resides at 836 North 63rd St., Wauwatosa, WI 53213.

6. Defendant Milwaukee Center for Independence, Inc. ("MCFI") is a non-stock company incorporated under the laws of the State of Wisconsin engaged in an industry affecting commerce and has had significant and continuous business contacts throughout the State of Wisconsin. MCFI operates its principal place of business from its offices located at 2020 W. Wells St., Milwaukee WI 53233.

**OPERATIVE FACTS**

7. Zalewski, Prom and Wedel commenced employment with MCFI on November 21, 1980, January 5, 2009 and August 15, 1992, respectively.

8. Pursuant to the terms of their employment with MCFI, Prom and Wedel participated in MCFI's Employee Retention Plan; and, Zalewski, Prom and Wedel participated in MCFI's Eligible 457 Executive Benefit Plan and its Ineligible Deferred Benefit Plan

2

(collectively "the Plans"). True and accurate copies of the Plan documents are annexed hereto as Exhibit A and incorporated herein by reference as if set forth with full particularity.

9. On or about May 12, 2017, MCFI sent letters to Zalewski, Prom and Wedel stating that it had determined there was an "operating deficit" for the years 2009, 2011, 2014, 2015 and 2016.

10. On or about May 12, 2017, MCFI sent letters to Zalewski, Prom and Wedel stating that contributions to their Plans for the years 2009, 2011, 2014, 2015 and 2016 were being reversed from their accounts.

11. MCFI contrived its definition for the calculation of "operating deficit," including what financial information should be relied on to calculate it, in order to claw-back past company contribution amounts from Zalewski, Prom and Wedel.

12. The Plan document does not define "operating deficit", the manner it should be calculated, and what financial documents should be relied on to do so, therefore, past practices, as determined by the Administrator of the Plan, should govern in determining how to interpret these items.

13. The Plans documents limit company contributions for a Plan Year "…to the extent that such Company Contributions do not result in or add to an operating deficit for MCFI's consolidated group of nonprofit entities…". (Sec. 3.2).

14. However, the Plans documents do not define "operating deficit," how this amount should be calculated, the timing for when the calculation should be performed, or what documents should be relied on to calculate the amount, however in 2017 MCFI retroactively introduced using audited financial statements to make that determination and the formula of total

3

revenues, minus total expenses to calculate the amount (excluding Independent Care, Inc. results).

15. MCFI's audited financial statements are prepared in accordance with GAAP, but the Plans documents do not state that determining operating deficit needs to be determined in accordance with GAAP either based on GAAP's definition of operating deficit (which doesn't exist) or from the perspective of using financial information prepared in accordance with GAAP to calculate the amount.

16. Section 3.2 in both Plan Documents state only that company contributions will be credited for a Plan Year "…to the extent that such Company Contributions do not result in or add to an operating deficit for MCFI's consolidated group of nonprofit entities (**as determined for financial statement purposes**…for such Plan Year…" (emphasis added).

17. The provision of "…as determined for financial statement purposes…" is not defined in the Plans Documents, but MCFI is retroactively making the leap and asserting that the definition alludes to the results (as reported) in MCFI's annual audited financial statements, rather than use internal (unaudited) financial information which historically had been used to determine whether MCFI could make annual contributions.

18. Historically, approval of these contributions had to be made using internal (unaudited) financial information as decisions, calculations, and approvals by the Committee (comprised of the MCFI President and members of MCFI's Executive Committee of the Board of Directors) were made at or shortly after a Plan Year-end (i.e., December and January).

19. The auditors for MCFI did not even perform their fieldwork until March and April of the following year, with the conclusion of their audit typically occurring in May or June.

20. Section 7.3 in both Plan Documents allows the Administrator "…to rely upon the Company's records as to information pertinent to calculations or determinations made pursuant to the Plan."

21. Nothing precluded the use of financial information other than audited financial statements in determining whether company contributions under the Plans would result in an operating deficit in a Plan Year.

22. Dr. Howard L. Garber as the Administrator of the Plan, and others at MCFI were in communication with its auditors who received information regarding the calculation and never suggested any change to the contributions or liability recorded each Plan Year, despite the provisions of the Plan being the same provisions MCFI is relying on now to assert its claw-back of these company contribution amounts.

23. After the completion of its audits which may have resulted in proposed adjustments to MCFI's financial information before 2017, no claw-backs were made by MCFI from participant accounts, even if these proposed adjustments resulted in a reduction in net assets (as reported in MCFI's audited financial statements).

24. The Plans documents do not define "operating deficit", the manner it should be calculated, and what financial documents should be relied on to do so, therefore, past practices, as determined by the Administrator of the Plan, should govern in determining how to interpret these items.

25. Section 7.1 of both Plan Documents state, "[t]he Administrator of the Plan shall be the Committee or such other person or entity designated by the Committee…" and that "[t]he Committee shall have all authority that may be appropriate for administering the Plan, including

the authority to adopt rules and regulations for implementing, amending and carrying out the Plan, interpreting the provisions of the Plan…"

26. Dr. Garber was the Administrator of the Plan and, therefore, had the authority for interpreting its provisions, including how "operating deficit" is defined, calculated, and what information is relied on to do so.

27. Historically, if internal (unaudited) financial results of MCFI were used to determine contribution eligibility then MCFI cannot retroactively claim this is inappropriate and MCFI's audited statements should have been the source of that determination.

28. The Administrator of the Plan had the authority to interpret provisions of the Plans and chose to use unaudited results to make these determinations with other MCFI committee and board members.

29. Additionally, section 7.2 of both Plan Documents states, "The Administrator shall have full and complete discretionary authority to determine eligibility under the Plan, to construe the terms of the Plan…".

30. This section 7.2 allows Dr. Garber the authority to interpret provisions of the Plan, including how and what information is relied on to calculate whether an operating deficit would exist following company contributions being made.

31. Members of the Executive Committee and Board of Directors were aware of estimated contributions based on internal (unaudited) financial information which was presented to them and ultimately approved by them.

32. All the requisite individuals from MCFI were aware of MCFI's financial results, how company contributions affected those results, and still approved Plan Year contributions based on internal (unaudited) financial information presented to them.

33. Section 7.3 of both Plan Documents allows the Administrator of the Plan "…to rely upon the Company's records as to information pertinent to calculations or determinations made pursuant to the Plan."

34. This provision allows the Administrator of the Plan to rely on internal financial information, other than audited financial statements, to make decisions concerning the calculation of any operating deficit for a Plan year.

35. Even if an "operating deficit" hypothetically exists in the 2009, 2011, and 2016 Plan Years with the inclusion of company contributions made to the Plans, not all company contributions made to the Plans for each of these years would be required to be clawed-back from participants.

36. Company contributions can be made to participants in a Plan Year to the "extent" to which they would not result in a "operating deficit".

37. The use of the word "extent" in the provision is critical as its use allows company contributions to be made to the Plans until an "operating deficit" results.

38. MCFI has taken the extreme and incorrect position for each of the subject Plan Years that the existence of an "operating deficit" with the inclusion of any company contributions made to a Plan means no company contributions are allowed, as opposed to what the Plans Documents allows which are contributions to be made to the "extent" an "operating deficit" results.

39. In the aggregate allowable company contributions to the Plans for each of these years, assuming hypothetically the operating deficits calculated by MCFI for each of these Plan Years existed, would be $8,291 (2009), $142,449 (2011), and $176,646 (2016).

40. Company contributions made to the Plans for Zalewski, Prom and Wedel for each of these Plan Years is as follows:

| Participant | 2009 | 2011 | 2016 |
|---|---|---|---|
| Zalewski | $31,990 | $16,500 | $0 |
| Wedel | $0 | $15,472 | $23,620 |
| Prom | $0 | $10,193 | $15,964 |

41. Not all company contributions made in 2009, 2011, and 2016, using MCFI's definition, would result in the incurrence of an "operating deficit".

42. All or at least a portion of the contribution amounts made to Zalewski, Prom, and Wedel for each of the subject Plan Years should be allowable according to the provisions of the Plan Documents.

43. Zalewski, Prom and Wedel have requested MCFI to provide them with the money that MCFI removed from their Plans.

44. MCFI has unreasonably refused to compensate Zalewski, Prom and Wedel with the money that MCFI removed from their Plans.

45. MCFI's refusal to compensate Zalewski, Prom and Wedel with the money that MCFI removed from their Plans has caused them to lose the benefits of their bargains, suffer tax liability, loss of income and interest, and to incur expenses in their efforts to collect their money.

46. MCFI has failed to apply the plan provisions consistently with respect to similarly situated claimants.

**CLAIM FOR RELIEF**
**ERISA § 502(a)(1)(B)**

47. As and for a claim for relief, the Plaintiffs reallege the allegations set forth above in paragraphs 1 through 46.

48. In this claim for relief, Zalewski, Prom and Wedel seek to enforce their personal rights to the money that MCFI removed from their Plans, pursuant to ERISA §502(a)(1)(B), [29 U.S.C. §1132(a)(1)(B)].

Plaintiffs, Richard Zalewski, Gerianne Prom and Robert Wedel demand relief as follows:

A. Judgment against MCFI awarding Plaintiffs the money that MCFI removed from their Plans;

B. Judgment against MCFI awarding Plaintiffs costs, disbursements, prejudgment interest, actual attorney's fees and expert witness fees incurred in prosecuting this claim, together with interest on said fees, pursuant to the ERISA §502(g)(1), [29 U.S.C. §1132(g)]; and

C. Such other relief as the Court deems just and equitable.

Dated this 20th day of April, 2020.

s/Alan C. Olson
Alan C. Olson, SBN 1008953
Nicholas M. McLeod, SBN 1057988
Attorneys for Plaintiffs
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: AOlson@Employee-Advocates.com